UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM R.,

                                      **Plaintiff,**

   vs.                                                     1:18-cv-01452
                                                                      (MAD)

**ANDREW SAUL,**
*Commissioner of Social Security,*

                                        **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **LEGAL AID SOCIETY OF NORTHEASTERN NEW YORK**<br>40 New Street<br>Saratoga Springs, New York 12866<br>Attorney for Plaintiff | **MARY MARTHA WITHINGTON, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION**<br>Office of the General Counsel<br>15 Sudbury Street<br>Suite 625<br>Boston, Massachusetts 02203<br>Attorney for Defendant | **DANIEL STICE TARABELLI, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On May 4, 2015, Plaintiff William R. filed an application for Supplemental Security Income ("SSI"). *See* Dkt. No. 8, Administrative Transcript ("Tr.") at 126. On October 22, 2015, Plaintiff's claims were initially denied. *Id.* at 127–32. Plaintiff made a timely request for a hearing before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on

November 1, 2017. *See id.* at 25–43. Plaintiff made a request to review the unfavorable decision, and on October 11, 2018, the Appeals Council denied Plaintiff's request to review. *See id.* at 6–9.

Plaintiff commenced this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking review of the Commissioner's unfavorable decision. Currently before the Court are the parties' briefs for judgment on the pleadings. *See* Dkt. Nos. 9, 14.

## II. BACKGROUND

Plaintiff's date of birth is April 27, 1973, which made him approximately forty-two years old at the time he filed for SSI on May 4, 2015. *See* Tr. at 126. The highest grade in school that Plaintiff completed was eighth grade. *See id.* at 59. Plaintiff testified that he cannot read or write. *See id.* Plaintiff testified that he is able to do basic math calculations and can handle money. *See id.* Plaintiff attempted to receive a GED, but failed the test. *Id.* at 63. Plaintiff received job training, specifically automotive training, in 1993. *See id.* at 62–63.

Plaintiff worked as an auto mechanic from the age of nineteen until approximately 2008, which is also the claimed onset date of disability. *See id.* at 57. Plaintiff's work history indicated that he worked from 2006 until 2008 as an auto technician at Kost Tire, a battery tester from 2003 to 2004 at Ultralife Battery, and from 2000 until 2004 as a technician at Jay's Tire. *See id.* at 214. Plaintiff believed that he held only one other job doing drywall work over twenty years prior. *See id.* at 63.

Plaintiff lived alone at the time of the hearing. *See id.* at 57. He was receiving temporary assistance from Social Services and food stamps at the time of the hearing. *See id.* at 60. Plaintiff indicated that he was told by his doctors not to drive because of limited range of motion in his neck, though he did have a driver's license at the time of the hearing. *See id.* at 58. Plaintiff stated he would take Medicab transportation for some appointments, but for grocery shopping, he

2

drove himself. *See id.* Plaintiff stated that he could walk for no more than five minutes, could stand for approximately ten minutes, and could sit for approximately twenty minutes at a time. *See id.* at 67. Plaintiff had particular difficulty with certain chores, including cleaning his dishes, bending over to pick up things, and taking the trash out, sometimes receiving assistance from his neighbors (including on visits to the grocery store). *See id.* at 72.

Plaintiff had cervical surgery in May 2016 and April 2015. *Id.* at 796. At Plaintiff's hearing, he described being prevented from working a full-time job because of "chronic neck pain, chronic depression, anxiety, constant nausea . . . ." *Id.* at 59. Plaintiff described having difficulty going up and down the stairs to his second floor apartment, which was exacerbated by his right leg "giv[ing] out because of the problem in my lower back." *Id.* at 61. Plaintiff indicated that he had been prescribed a cane and a walker by a doctor. *See id.* at 66. Plaintiff further indicated that he had permanent tingling in multiple fingers due to his neck surgery, which interfered with his ability to lift objects. *See id.* at 62. At the time of the hearing, Plaintiff stated that he took medication for depression, anxiety, chronic pain, nausea, and acid reflux. *See id.* at 60. As a result of his impairments, Plaintiff claimed that he was unable to lift and carry more than ten pounds, and if he tried to lift more, he got a shooting pain down his right leg. *See id.* at 62. Plaintiff described that he believed that, in terms of preventing his ability to try and find and keep a job, it was a "tie" between his mental and physical problems. *See id.* at 64.

Plaintiff indicated that his chronic neck pain forced him to sleep in a recliner. *See id.* at 65. Plaintiff sleeps seven to nine hours an evening due to his medications for depression and anxiety. *See id.* at 59. Plaintiff smokes approximately one pack of cigarettes a day. *See id.* At the time of the hearing, Plaintiff had been in recovery for alcohol addiction for approximately three months "this round," attending Alcoholics Anonymous meetings two times a week. *See id.*

3

at 60–61. Since applying for disability, Plaintiff stated his longest period of sobriety was ten months. *See id.* at 69. At times, Plaintiff stated he consumed approximately thirty beers per day. *See id.* at 489. Plaintiff stated that his anxiety resulted in his having "a hard time going out in public." *Id.* at 68. Plaintiff indicated his only hobby was using a radio-controlled car. *See id.* at 72.

In a decision dated November 1, 2017, the ALJ determined that Plaintiff was not disabled under the Social Security Act. *See id.* at 25–43. Plaintiff timely filed a request for review by the Appeals Council, *see id.* at 182–85, and the Appeals Council denied his request for review, rendering the ALJ's decision the Commissioner's final decision. *See id.* at 6–9. In his decision, the ALJ found the following: (1) Plaintiff had not engaged in substantial gainful activity since May 4, 2015; (2) Plaintiff's severe impairments include degenerative disc disease of the cervical spine with radiculopathy, primarily into the left upper extremity, lumbar degenerative disc disease with radiculopathy and a herniated disc at L5-S1 on the right, anxiety disorder, panic disorder with agoraphobia, major depressive disorder, and alcohol use disorder/alcohol dependence; (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments; (4) Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with limitations to not standing in excess of thirty minutes at a time, having the option to reposition or stand at will, minimal interaction with the public, performance of simple, routine, and repetitive tasks, and not performing work requiring constant movement of the head either up or down or left to right; (5) Plaintiff's RFC renders him not capable of performing past relevant work; and (6) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform.  *See id.* at 30–43.  Accordingly, the ALJ found that Plaintiff is not disabled as defined in the Social Security Act.  *See id.*

Plaintiff commenced this action for judicial review of the denial of his claims by the filing of a complaint on December 14, 2018.  *See* Dkt. No. 1.  The parties have filed briefs for judgment on the pleadings.  *See* Dkt. Nos. 9, 14.

## III. DISCUSSION

### A. Standard of Review

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  There is a five-step analysis for evaluating disability claims:

> In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)) (other citation omitted).  "The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step."  *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Court

must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

**B.  The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 4, 2015, the application date. *See* Tr. at 30. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy, primarily into the left upper extremity, lumbar degenerative disc disease with radiculopathy and a herniated disc at L5-S1 on the right, anxiety disorder, panic disorder with agoraphobia, major depressive disorder, and alcohol use disorder/alcohol dependence. *See id*. at 30–33. At step three, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments that functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 33–35. The ALJ then found that Plaintiff

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a). Additionally, the claimant cannot stand in excess of 30 minutes at a time and must have the option to reposition or stand at will (i.e., a sit/stand option). The claimant can have minimal (i.e., brief and superficial) interaction with the public. He can perform simple, routine, and repetitive tasks. He cannot do work requiring constant movement of the head either up or down or left to right.

*Id.* at 35. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. *See id.* at 42. At the fifth and final step of the analysis, the ALJ solicited the testimony of a vocational expert. *See id.* at 42–43. The vocational expert testified that a hypothetical individual of Plaintiff's age, with his education, past relevant work experience, and RFC (as described above) could perform the representative occupations of surveillance systems monitor, call out operator, escort vehicle driver, and possibly a document preparer. *See id.* at 43 The ALJ relied on this testimony to determine that Plaintiff was not disabled as defined by the Social Security Act. *See id.*

## C. Analysis

Plaintiff contends that the ALJ's determination denying his disability application should be remanded back to the Commissioner for the following reasons: (1) the ALJ did not consider the cumulative effect of Plaintiff's impairments; (2) Plaintiff met the criteria for a Listed Impairment under § 12.04 depressive, bipolar and related disorders and § 12.06 anxiety and obsessive-compulsive disorders[1]; (3) the RFC is not supported because the ALJ gave improper weight to

---

[1] The Court notes that both parties argued about Plaintiff's qualifications under Listings

(continued...)

7

Plaintiff's subjective complaints and failed to engage in the proper analysis under Social Security Ruling 16-3; (4) the ALJ committed reversible error in finding the RFC to perform sedentary work in occupations identified by the vocational expert; and (5) the ALJ's decision is against the substantial weight of the evidence and is incorrect as a matter of law. *See* Dkt. No. 9 at 17–26.

### *1. Combined Impact of Plaintiff's Impairments*

Plaintiff summarily alleges that the ALJ failed to consider the combined effect of Plaintiff's impairments, particularly focusing on the combination of physical and mental impairments, leading to an erroneous decision that Plaintiff is not impaired. *See* Dkt. No. 9 at 18–19. This argument is without merit.

The ALJ noted the effect of Plaintiff's impairments in combination in Plaintiff's evaluation. Throughout the ALJ's decision, he noted that he was, in fact, required to consider Plaintiff's impairments in combination. *See* Tr. at 28, 29, 30, 33, 34. At step two, the ALJ discussed a connection between Plaintiff's alcoholism and his gastritis and pancreatitis. *See* Tr. at 32, 673, 687. At step four, the ALJ further discussed that, at times when Plaintiff was drinking heavily, it "appears [it] was contributing to his abdominal pain and nausea." *Id.* at 40, 687–88. Again at step four, the ALJ explicitly stated that Plaintiff "reported taking medication for nausea, which he associated with anxiety." *Id.* at 40, 416. The ALJ further acknowledged that he "considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence." *Id.* at 35. Thus, "[w]hen taken together, the ALJ's [complete] analysis sufficiently assessed the plaintiff's impairments in

---

[1](...continued)
12.04 and 12.05. *See* Dkt. No. 9 at 19–20; Dkt. No. 4 at 3–6. The ALJ, however, clearly discussed Plaintiff's qualifying under Listings 12.04 and 12.06 (*not* 12.05). *See* Tr. at 34–35. Despite this error on the part of both parties, the Court will analyze the correct Listings evaluated by the ALJ.

combination at several points in his decision. The ALJ also examined plaintiff's medical records. Accordingly, [the Court] finds that the ALJ's assessment of the plaintiff's combination of impairments was sufficient." *DeJesus v. Astrue*, No. 3:10-CV-705, 2011 WL 2076447, *3 (D. Conn. May 26, 2011) (citing *Gooch v. Sec'y of Health & Human Servs.*, 833 F.3d 589, 591–92 (6th Cir. 1987) ("The ALJ's decision not to reopen [the plaintiff's] earlier application for disability benefits was made after 'a thorough review of the medical evidence of record,' and the fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered, particularly in view of the fact that the ALJ specifically referred to 'a combination of impairments' in deciding that [the plaintiff] did not meet the 'listings.'")).

### 2. Plaintiff's Impairments

Plaintiff argues that the ALJ erred at step three of the sequential evaluation. Plaintiff contends that his depression and anxiety meet the criteria of Listing 12.04 (depressive, bipolar and related disorders) and Listing 12.06 (anxiety and obsessive-compulsive disorders), and that this demonstrates that he was unable to engage in substantial gainful activity. *See* Dkt. No. 9 at 19–20. The Court finds this argument unpersuasive.

The Listing of Impairments, set forth in Appendix 1 of 20 C.F.R. Part 404, Subpart P, describes for each of the major body systems impairments that are considered severe enough to prevent an individual from performing any gainful activity, regardless of his or her age, education or work experience. In order to meet or equal Listing 12.04, Plaintiff had to show that his depressive, bipolar, or related disorder satisfied the requirements of paragraphs A and B, or A and C, as set forth below:

> A. Medical documentation of the requirements of paragraph 1 or 2:
>
>> 1. Depressive disorder, characterized by five or more of the following:

    a. Depressed mood;
    b. Diminished interest in almost all activities;
    c. Appetite disturbance with change in weight;
    d. Sleep disturbance;
    e. Observable psychomotor agitation or retardation;
    f. Decreased energy;
    g. Feelings of guilt or worthlessness;
    h. Difficulty concentrating or thinking; or
    i. Thoughts of death or suicide.

   2. Bipolar disorder, characterized by three or more of the following:
    a. Pressured speech;
    b. Flight of ideas;
    c. Inflated self-esteem;
    d. Decreased need for sleep;
    e. Distractibility;
    f. Involvement in activities that have a high probability of painful consequences that are not recognized; or;
    g. Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:[2]

  1. Understand, remember, or apply information.
  2. Interact with others.
  3. Concentrate, persist, or maintain pace.
  4. Adapt or manage oneself.

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

---

[2] An "extreme limitation" means that an individual is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 12.00(F)(2)(e). A "marked limitation" means that an individual's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 12.00(F)(2)(d).

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demand that are not already part of your daily life.

Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 12.04 (internal citations omitted).

In order to meet or equal Listing 12.06, Plaintiff had to show that his anxiety and obsessive-compulsive disorder satisfied the requirements of paragraphs A and B, or A and C, as set forth below:

> A. Medical documentation of the requirements of paragraph 1, 2, or 3:
>
> > 1. Anxiety disorder, characterized by three or more of the following:
> >    a. Restlessness;
> >    b. Easily fatigued;
> >    c. Difficulty concentrating;
> >    d. Irritability;
> >    e. Muscle tension; or
> >    f. Sleep disturbance.
> >
> > 2. Panic disorder or agoraphobia, characterized by one or both:
> >    a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or
> >    b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside your home, being in open spaces).
> >
> > 3. Obsessive-compulsive disorder, characterized by one or both:
> >    a. Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or
> >    b. Repetitive behaviors aimed at reducing anxiety.
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:[3]

---

[3] *See supra*, note 2.

> 1. Understand, remember, or apply information.
> 2. Interact with others.
> 3. Concentrate, persist, or maintain pace.
> 4. Adapt or manage oneself.
>
> OR
>
> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
>> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
>> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demand that are not already part of your daily life.

Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 12.06 (internal citations omitted).

For a claimant to show that his impairment meets a Listing, the claimant must meet all of the specified medical criteria of that Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990). An impairment that manifests some but not all of the Listing's criteria does not qualify. *See id*.

In the present matter, the ALJ thoroughly explained why Plaintiff's impairments failed to satisfy the criteria for paragraphs B and C of Listings 12.04 and 12.06, which are identical. With regards to the criteria for paragraph B, the ALJ analyzed each area of mental functioning in turn, citing to multiple instances in the record that demonstrate that Plaintiff failed to satisfy the necessary standard. *See* Tr. at 34. The ALJ's conclusion that "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme limitation, the 'paragraph B' criteria are not satisfied" is supported by substantial evidence. *Id.* With regards to the criteria for paragraph C, the ALJ cites to multiple instances in the record that demonstrate that

Plaintiff failed to demonstrate evidence of marginal adjustment, a requirement he had to meet. *Id.* at 35. The ALJ's conclusion that "the claimant's ability to handle difficulties without decompensating" is, therefore, also supported by substantial evidence. *Id.*

### 3. Plaintiff's subjective complaints and SSR 16-3

Plaintiff argues that the Residual Functional Capacity ("RFC") is not supported because the ALJ gave improper weight to Plaintiff's subjective complaints and failed to engage in the proper analysis under Social Security Ruling 16-3. *See* Dkt. No. 9 at 20–22. Between steps three and four, the ALJ must determine a claimant's RFC. *See* 20 C.F.R. §§ 404.1520(e) and 416.920(e). The RFC is based on all relevant evidence of record, which includes the claimant's credible testimony regarding the limiting effects of his impairments, both those deemed severe and non-severe at step two, objective medical evidence documenting signs and symptoms of impairments and functional limitations, and medical opinion from treating and consulting sources regarding the claimant's ability to function. *See* 20 C.F.R. §§ 404.1545 and 416.945. The RFC assessment also considers exertional and non-exertional work functions. *See* 20 C.F.R. §§ 404.1569(a) and 416.969(b). Pain, and other subjective symptoms related to a medically determinable impairment, may affect both the exertional and non-exertional functions of work, and are also factored into the residual functional capacity assessment. *See* 20 C.F.R. §§ 404.1529 and 416.929. The ALJ's decision must address complaints and pain, and other symptoms, and determine whether such subjective complaints are credible and affect the claimant's RFC.

The Social Security Act provides that "[a]n individual's statement as to pain and other symptoms shall not alone be conclusive evidence of disability. . . ." 42 U.S.C. § 423(d)(5)(A). Rather, "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results

from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged. . . ." *Id.*

The ALJ found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 416.967(a). Additionally, the claimant cannot stand in excess of 30 minutes at a time and must have the option to reposition or stand at will (i.e., a sit/stand option). The claimant can have minimal (i.e., brief and superficial) interaction with the public. He can perform simple, routine, and repetitive tasks. He cannot do work requiring constant movement of the head either up or down or left to right.

Tr. at 35. The ALJ further highlighted the following evidence in support of his determination that the medical record did not support the alleged severity of Plaintiff's subjective back, neck, and mental symptoms: (1) Plaintiff initially reported having good results after his April 2014 neck surgery (*see* Tr. at 36, 416, 718–19); (2) objective physical examinations of Plaintiff that were largely normal (*see id.* at 36–38, 415–16, 644, 651, 697, 698, 704, 713, 719, 720); (3) Plaintiff improving "tremendously" after his second neck surgery in May 2016 (*see id.* at 37, 697–98, 706); (4) negative EMG testing on Plaintiff's right arm (*see id.* at 37, 711); (5) Plaintiff's participation in daily activities, including working on a car (*see id.* at 38, 741) and competing in model car races (*see id.* at 39, 723); (6) "the October 2015 examination by Albert Paolano, M.D., who found no limitations on clinical examination apart from some limitation in cervical range of motion" (*id.* at 39, 474); (7) "statements of the claimant's mental health treatment provider that the claimant did not appear overtly disabled and suggested he try to obtain vocational rehabilitation for a job less physically demanding than an auto mechanic" (*id.* at 39, 434, 437, 734); (8) Plaintiff's primary care physician refusing to give him a handicapped parking permit, which "suggests that he believed the claimant capable of walking greater distances than he testified" (*id.* at 39, 738); (9) Plaintiff indicating that his antidepressant medication was effective (*see id.* at 40, 444); (10)

Plaintiff reporting "'ok' control of his depression on medication and 'ok' control of anxiety, although he indicated that he was still getting very nervous around people in general and crowds in particular" (*id.* at 40, 416, 418); (11) Plaintiff's therapist "seem[ing] to believe the claimant would be capable of working, contrary to his assertions, and encourag[ing] him to find alternative employment, perhaps part-time work or low stress work. She also suggested less physically demanding work, indicating that she did not think him mentally incapable of working" (*id.* at 40, 434–34, 734); (12) Plaintiff's "largely unremarkable" mental status examinations (*id.* at 40, 411, 438–39, 484, 742–43, 745, 747–50, 752, 767, 770); (13) Plaintiff's "ability to maintain and establish new romantic relationships, maintain friendships, and interact with neighbors indicates that he is not very limited around familiar people" (*id.* at 408–21, 426–44, 722–53, 662); (14) the opinion of Dr. L. Hoffman, Ph.D., who "opined that the claimant could understand and follow instructions, maintain attention and concentration, adapt to basic change, and handle brief contact with the public" (*id.* at 41, 112–25).

The ALJ properly determined that Plaintiff's subjective complaints were not supported by his treatment records. *Vasequez v. Berryhill*, No. 16 Civ. 6707, 2017 WL 1592761, *18 (S.D.N.Y. May 1, 2017). Therefore, while the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." Tr. at 42. The Court finds that, when the ALJ rejected Plaintiff's testimony in light of "objective medical evidence and any other factors deemed relevant, he [did] explain that decision 'with sufficient specificity to enable the [reviewing] Court to decide whether there [were] legitimate reasons for the ALJ's disbelief' and whether his decision [was] supported by substantial evidence." *Calzada*

*v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010) (quoting *Fox v. Astrue*, No. 6:05-CV-1599, 2008 WL 828078, *12 (N.D.N.Y. Mar. 26, 2008)).

### *4. RFC and representative occupations*

At step five of the analysis, the ALJ found that – considering Plaintiff's age, education, work experience, and RFC – jobs that Plaintiff can perform exist in significant numbers in the national economy. *See* Tr. at 42–43. The ALJ's findings were based upon the vocational expert's testimony that jobs, as a surveillance systems monitor, call out operator, escort vehicle driver, and possibly a document preparer, are available for a person of Plaintiff's age, education, work experience, and RFC. *See id.*

Plaintiff contends that he is unable to perform the basic demands of sedentary work because he does not have the ability to perform the walking/standing component, the prolonged sitting required, and his cervical and lumbar degenerative disc disease prevent him from engaging in any repetitive movement of his upper extremities "generally associated with work at all exertional levels." Dkt. No. 9 at 23. Essentially, Plaintiff argues that substantial evidence does not support the RFC. *See id.* Plaintiff further argues that the ALJ committed reversible error in finding the RFC to perform sedentary work in occupations identified by the vocational expert. *See id.* at 22–24.

At the hearing, the ALJ asked Margaret Heck, the vocational expert, whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. *See* Tr. at 78–85. The vocational expert testified that, given the above factors, Plaintiff would be able to perform the requirements of surveillance systems monitor, call out operator, escort vehicle driver, and possibly a document preparer. *Id.* The vocational expert also testified in response to various hypothetical questions from the ALJ,

including as related to absences from work three days per month due to "symptoms of exacerbation like pain," being off task twenty percent of the day, limited contact with the public, and movement of the neck. *See id.*

"At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." *McIntyre*, 758 F.3d at 151. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion,' . . . and accurately reflect the limitations and capabilities of the claimant involved[.]" *Id.* (internal quotation and other citation omitted).

In the present matter, the ALJ provided the vocational expert with Plaintiff's physical and mental abilities in posing his hypothetical questions. *See* Tr. at 78–85. Using this information, the vocational expert indicated that Plaintiff would be suitable for a sedentary occupation and provided considerable details regarding the available jobs in the nation, including in response to Plaintiff's questions. *See id.* Since there was substantial evidence in the record supporting the assumptions upon which the hypothetical question was based, the ALJ properly relied on the vocational expert's testimony in response to the hypothetical questions. *See McIntyre*, 758 F.3d at 151–52.[4]

---

[4] Furthermore, while Plaintiff argues that the Court and the ALJ should consider the Directory of Occupational Titles ("DOT"), "an ALJ can take administrative notice of job data from 'various governmental and other publications' including the DOT." *Allen o/b/o Allen v. Comm'r of Soc. Sec.*, No. 5:16-CV-1207, 2017 WL 6001830, *7 (N.D.N.Y. Dec. 4, 2017)

(continued...)

Based on the foregoing, the Court finds that the ALJ properly relied on the vocational expert's opinion.

### 5. *Weighing the Evidence*

Plaintiff argues that the decision of the ALJ is against the substantial weight of the evidence and is incorrect as a matter of law. *See* Dkt. No. 9 at 24–25. As stated previously, the Second Circuit has explained that upholding a determination based on the substantial evidence standard where the legal principals may have been misapplied "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986. However, if the record is such that the application of the correct legal principles "could lead to only one conclusion, there is no need to require agency reconsideration." *Id.*

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente*, 733 F.2d at 1041. This very deferential standard of review means that "once an

---

[4](...continued)
(quoting 20 C.F.R. § 416.966(d)(1)). Even if the Court were to accept Plaintiff's argument that the positions of surveillance system monitor and call out operator "no longer exist in significant numbers in the national economy," *see* Dkt. No. 9 at 24 n.27, Tr. at 322–23, the vocational expert testified that 68,649 document preparer and escort vehicle driver positions remain in the national economy. Tr. at 79–82. "Courts have held that numbers varying from 9,000 upwards constituted 'significant.'" *Rosa v. Comm'r of Social Security*, No. 3:14-CV-1145, 2015 WL 7574516, *6 (N.D.N.Y. Nov. 4, 2015), *R&R adopted* 2015 WL 7573222 (N.D.N.Y. Nov. 25, 2015). The Court finds that the ALJ correctly determined that, based on the vocational experts testimony, significant numbers of positions still exist for Plaintiff in the national economy.

ALJ finds facts, [the Court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault*, 683 F.3d at 448 (quoting *Warren* 29 F.3d at 1290).

The Court finds that, for the reasons stated throughout its decision, substantial evidence permeates the ALJ's thorough record and decision, and therefore the Court defers to the ALJ.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the Parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying Supplemental Security Income is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 8, 2020
  Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge